**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AGT CRUNCH CHICAGO, LLC, successor-in-interest to Bally Total Fitness Corporation,<br><br>Plaintiff,<br><br>v.<br><br>939 NORTH AVENUE COLLECTION, LLC, successor-in-interest to North Avenue Collection, LLC,<br><br>Defendant. | Case No. 07 C 2986<br><br>Honorable James B. Zagel<br><br>Magistrate Judge Arlander Keys |

**AGT CRUNCH CHICAGO, LLC'S RESPONSE**
**<u>TO DEFENDANT'S MOTION TO DISMISS</u>**

Plaintiff, AGT Crunch Chicago, LLC ("Crunch"), for its response to the Motion to Dismiss of 939 North Avenue Collection, LLC ("939 North"), states as follows:

## I. <u>INTRODUCTION</u>

939 North's Motion to Dismiss (the "Motion") should be denied. The Motion seeks dismissal of Crunch's Complaint for Declaratory Relief (the "Complaint"), claiming that Crunch's interpretation of a lease provision regarding the means for calculating Crunch's proportionate share of real estate taxes is so unreasonable, and so unsupported by the plain language of the lease, that the Court should dismiss the case entirely. As will be demonstrated below, the Complaint establishes the existence of a dispute regarding the terms of the Lease that should be resolved. Moreover, contrary to the unfounded arguments set forth in the Motion, Crunch's construction of the Lease: a) is based upon the plain meaning of the Lease, without any recourse to parol evidence b) is consistent with the other terms or conditions of the Lease, c) is consistent with the manner in which taxes are assessed and collected in Illinois; and d) does not require the Court to imply or insert any new terms to the Lease. 939 North's two constructions

of the Lease, however, require that a new term be inserted or implied into the Lease and to misconstrue a defined term so that it can impose more than $245,000 in real estate tax liability per year during the term of the Lease on Crunch.

The Motion should be denied.

## II. <u>BACKGROUND</u>

Crunch operates a fitness club at 939 West North Avenue in Chicago which it rents from 939 North. (Cmplt. ¶ 1) The parties' relationship is governed by a lease (as subsequently amended) executed as of January 5, 2001 (the "Lease"). (The Lease is attached to the Complaint as Exhibit A and is hereinafter referred to as "Ex. A")

### A. The Lease

The Lease provisions at issue relate to the calculation of Crunch's real estate tax liability to 939 North. Crunch's share of the real estate taxes is determined by a simple formula. Crunch is to pay its proportionate share of the increase in real estate taxes in a given calendar year from the Real Estate Taxes in the Base Year which the parties agree is 2004. Section 13.3 provides:

> Tenant shall pay to Landlord, on the first day of each calendar month, commencing on the Additional Rent Commencement Date (defined in Section 5.4 hereof) and continuing throughout the balance of the Term of the Lease, one-twelfth ($1/12^{th}$) of the increase in Tenant's Proportionate Share (or Prorata Share [defined hereinafter], as the case may be) of Real Estate Taxes, for that calendar year, over Tenant's Proportionate Share (or Prorata Share, as the case may be) of Real Estate Taxes in the Base Year (Ex. A § 13.3)

The first part of this formula, the Real Estate Taxes for a calendar year subsequent to the Base Year, is defined and not in controversy. Recognizing that in Cook County real estate taxes are charged and paid in different years, the parties to the Lease explicitly provided 939 North the option to treat Real Estate Taxes for a calendar year as either the taxes paid in that year, or the taxes assessed in that year (and paid the following year). The option expressly provides:

> Real Estate Taxes "for" a calendar year shall be deemed to refer, at Landlord's option, either to Real Estate Taxes payable in such calendar year or to Real Estate Taxes levied, assessed or otherwise accrued or imposed for such calendar year without regard to when such Real Estate taxes are payable; provided that once Landlord makes said election, it shall not change it. (Ex. A § 13.3)

The parties' disagreement arises when determining what should be subtracted from the real estate taxes for calendar year 2005 to determine Crunch's proportionate share of real estate tax liability. That is, what is meant by the term "Real Estate Taxes in the Base Year." (Ex. A § 13.3) The "Base Year" is agreed by the parties to be 2004. (Mot. p. 5) The other portion of the phrase, "Real Estate Taxes" is expressly defined in the Lease. Section 13.3 of the Lease defines "Real Estate Taxes" as:

> 'Real Estate Taxes' shall mean thirty[-]five (35%) percent of general and special taxes, assessments, duties, and levies charged, levied and assessed against the Project . . . (Ex. A § 13.3)

**B. The Dispute**

This term is critical because the property was under construction in 2003, and the taxes paid in 2004 (based on 2003 assessments), were substantially lower than the taxes assessed in 2004 (and payable in 2005) when the construction was complete. In order to take advantage of this extreme difference in Crunch's proportionate share of real estate taxes, 939 North initially asserted that it was entitled, under the Lease, to choose as between the real estate taxes <u>paid</u> in 2004 (2003 taxes) and the real estate taxes <u>assessed</u> against the property in 2004 (and payable in 2005) for Real Estate Taxes in the Base Year. (Cmplt. ¶ 14, Ex. B)

Not surprisingly, 939 North "elected" to utilize the real estate taxes "paid" in 2004 (2003 taxes) as the Real Estate Taxes in the Base Year for calculating Crunch's proportionate share of the increase in 2005. In a letter dated February 16, 2007 (attached to the Complaint as Exhibit B), 939 North advised Crunch that, "[l]andlord has deemed that your base year is defined as the

year in which the common area maintenance expenses and real estate tax expenses were disbursed. As a result, the Landlord respectfully disagrees with your definition of the base year being the 2004 taxes which were paid in 2005." (Cmplt. ¶ 14, Ex. B)

Crunch responded by letter dated March 14, 2007. (Cmplt. ¶ 15, Ex. C) Crunch disputed that 939 North had any right under the Lease to "elect" between a payable and accrual basis for Real Estate Taxes in the Base Year. Crunch advised 939 North that its right to elect the measure of real estate taxes "relates solely to the calculation of how Real Estate Taxes will be payable with respect to calendar years subsequent to the Base Year." (Cmplt. Ex. C)

After receiving Crunch's response, 939 North threatened to declare a default under the Lease and to draw down on the letter of credit Crunch had posted as a security deposit. (Cmplt. ¶ 16, Ex. D) Crunch then filed the Complaint in the Circuit Court of Cook County seeking declaratory relief.

### C. The Motion to Dismiss

In response to the Complaint, 939 North removed the case from the Circuit Court of Cook County to this court and filed a motion to dismiss pursuant to Rule 12(b)(6). In the Motion, however, 939 North departs from its pre-litigation position. 939 North no longer primarily relies on its purported exercise of an "option" to determine Real Estate Taxes in the Base Year. Instead, 939 North now claims that the plain and unambiguous language of the phrase "Real Estate Taxes in the Base Year" actually means Real Estate Taxes paid in the Base Year, 2004. (Mot. pp. 6-8). Though this interpretation requires the Court to rewrite the Lease to insert the term "paid," and to ignore the definition of "Real Estate Taxes," 939 North claims its interpretation is the only plausible reading of the Lease and it seeks dismissal of the Complaint with prejudice.

## III. 939 NORTH'S MOTION IGNORES THE STANDARD APPLICABLE TO MOTIONS TO DISMISS

Though 939 North claims it should prevail under every possible interpretation of the Lease, Crunch need only set forth facts sufficient to establish a plausible entitlement to relief to defeat the motion. *Villasenor v. Am. Signature*, No. 06 C 5493, 2007 U.S. Dist. LEXIS 49299 at *6 (N.D. Ill. July 9, 2007)

The standards for assessing a 12(b)(6) motion were recently set forth in *Maes v. Folberg*, No. 06 C 6849, 2007 U.S. Dist. LEXIS 47657 at **1-2 (N.D. Ill. June 27, 2007). In reviewing a 12(b)(6) motion, "the complaint's well-pleaded factual allegations are taken as true, including the inferences reasonably drawn from them." *Id.* The *Folberg* court, though acknowledging *Bell Atlantic's* holding that a plaintiff is obligated to provide the grounds of his entitlement to relief to survive a 12(b)(6) motion, noted that the Seventh Circuit has consistently, and recently (i.e. post-*Bell Atlantic*), articulated its view that dismissal is appropriate only "if a plaintiff does not allege such a claim or if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle her to relief" *Id.* (quoting *Bowers v. Fed'n Internationale de L'Automobile*, No. 06-2718 _ F.3d _, 2007 U.S. App. LEXIS 12194 at *7 (7th Cir. May 25, 2007)). "Dismissal under Rule 12(b)(6) is reserved for complaints that do not state legally cognizable claims . . ." *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 923 (7th Cir. 2007). The Motion does not meet this exacting standard.

## IV. THE COMPLAINT STATES A CAUSE OF ACTION FOR DECLARATORY RELIEF

### A. There is a Bona Fide Dispute Requiring Resolution

The Complaint states a cause of action as it sets forth the differing Lease interpretations of each party. These varying interpretations require a resolution, not dismissal. The Seventh Circuit has made clear that:

> If the declaratory judgment will clarify and settle the disputed legal relationships and afford relief from the uncertainty and controversy that created the issues, it is usually resolved rather than dismissed. *NUCOR Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1994)

Rather than have the Court "clarify and settle" this Lease interpretation question, 939 North attacks the pleading in what it has positioned as its first of several attacks against Crunch. Indeed, while asserting several arguments in the Motion based on what it terms the "plain language" of the Lease, 939 North hedged its bets by "reserv[ing] its right to assert all other arguments and defenses," in the event the Court does not adopt this first round of arguments. (Mot. p. 3 n.1) This approach runs afoul of *NUCOR's* preference for resolution, as even if the Court denies the Motion based upon its rejection of 939 North's interpretation of the Lease and adopts Crunch's interpretation of the Lease, the parties will be no closer to having their legal rights and obligations under the Lease settled because 939 North has claimed the right to change its position and force Crunch to litigate against a whole new position. If the parties are to spend their resources and the Court's resources litigating the meaning of the Lease, they may as well spend their time and resources having their rights determined rather than on rounds of re-pleading or briefing of motions to dismiss.

## B. The Construction of the Lease Asserted by Crunch in the Complaint is Correct, And, Therefore, States a Claim

### 1. Applying the Definition of "Real Estate Taxes" to the phrase "Real Estate Taxes in the Base Year" means that "Real Estate Taxes in the Base Year" are Those Real Estate Taxes "Charged, Levied and Assessed" in the Base Year

The only reasonable interpretation of the Lease is that "Real Estate Taxes in the Base Year" refers to the real estate taxes charged, levied and assessed in the Base Year, 2004. Sensibly, this interpretation, unlike that offered by 939 North, utilizes the definition of "Real Estate Taxes" to determine the meaning of the phrase "Real Estate Taxes in the Base Year."

Section 13.3 of the Lease defines Real Estate Taxes as those taxes "charged, levied and assessed against the Project." (Ex. A § 13.3) Inserting this definition into the disputed phrase leads to one conclusion: "Real Estate Taxes in the Base Year" refers to the taxes "charged, levied and assessed against the Project" in the Base Year.

### 2. 939 North's Criticisms of Crunch's Interpretation of the Lease Are Not Founded in Law or Fact

#### a. 939 North's Interpretation Ignores When Real Estate Taxes Are Assessed and Paid in Cook County

939 North attempts to refute Crunch's interpretation by arguing that interpreting the phrase "Real Estate Taxes in the Base Year" to mean those taxes charged, levied and assessed in the Base Year, would create an ambiguity. It claims "use of the preposition 'in' when linked to the actions of 'charged, levied and assessed'" would eliminate the distinction between the two methods of attributing taxes to a particular year. (Mot. p. 11) This argument is premised on 939 North's erroneous claim that "Real Estate Taxes that are paid in [2004] are the exact same as the Real Estate Taxes 'charged, levied and assessed against the Project' in [2004]." (Mot. p. 6) 939 North, without citation to authority, claims this is so because Cook County "does the charging ***for*** a given calendar year ***in*** the following calendar year." (Mot. p. 12; emphasis in original)

The argument that the taxes "charged" are the same as those "paid" is made out of ignorance of Cook County's real estate tax scheme. In fact, Crunch's Lease interpretation is consistent with Illinois' real estate tax scheme in which taxes are assessed in one year and paid the next. "In Illinois, real estate taxes are assessed on January 1st of each year and are payable the following year." *In re Stewart*, 190 B.R. 846, 848 (C.D. Ill. 1996) Illinois' statutory scheme provides that "taxes are assessed on a calendar year basis and are billed the following year." *In re OBT Partners*, 214 B.R. 863, 867 (N.D. Ill. 1997); 35 ILCS 200/1-155. As the *OBT* court recognized, "[u]npaid taxes become a lien on the property as of January 1 of the year in which

the taxes are assessed, even though the amount is unknown and undetermined and the taxes are not yet payable." *OBT Partners*, 214 B.R. at 868; 35 ILCS 200/21-75. *See In re Handy Andy Home Improvement Ctrs., Inc.*, 196 B.R. 87, 90 (N.D. Ill. 1996) ("unpaid taxes become a lien on the property as of January 1 of the year in which the taxes are levied") Illinois law is clear that the tax obligation is created and the property liened—not in the year the taxes are paid—but on January 1st of the previous year.

**b. 939 North Ignores the Meaning of the Word "Charged"**

939 North's argument that the taxes "charged" in 2004 are the very same taxes "paid" in 2004 also defies the definition of the word "charge." Black's Law Dictionary defines the word "charge" as follows:

> To impose a burden, duty, obligation, or lien; to create a claim against property; to assess . . .(BLACK'S LAW DICTIONARY 232 (6th ed. 1990))

This definition makes clear that real estate taxes are not "charged" at the time of payment, but rather, when the tax is "assess[ed]" and the "claim against property" is "create[d]." Though in Cook County the "obligation" is not satisfied until the following year, this does not negate the fact that the tax is "impose[d]" on January 1st of the previous year.

This conclusion is further supported by the phrase "against the Project" in the definition of "Real Estate Taxes." The use of the word "against" is consistent with the assessment of taxes—not their payment—as taxes are assessed "against" property. It would make no sense for the term "charge" to equate with payment since the "payment" of taxes is an obligation to the landowner, while the taxes become a lien "against" the Property.

**c. Crunch's Interpretation is Consistent With All Other Terms of the Lease**

939 North claims that Crunch's interpretation of the Lease would nullify the Additional Rent provision, Section 5.4 of the Lease. 939 North correctly notes that Additional Rent

includes Real Estate Taxes and that such additional rent is due the first day of the year following the Base Year, January 1, 2005. (Mot. pp. 9-10) Thus, 939 North argues that the "Real Estate taxes in the Base Year" cannot mean those paid in 2005 because those would be the very same taxes as those in the following year which comprise the Additional Rent period. (Mot. p. 10)

This argument is a nonstarter as it completely ignores the multiple components that make up Additional Rent under the Lease. 939 North's argument implies that the entire Additional Rent provision would be nullified. This is simply not the case. Section 5.4 defines "Additional Rent" as including: "Common Area Maintenance Charges, Office/Health Club Common Area Maintenance Charges, Real Estate Taxes and any other sum coming due to Landlord or advanced by Landlord in performance of its rights or obligations herein." (Ex. A § 5.4) Given that Additional Rent is comprised of more than Real Estate Taxes, even if there were no Real Estate Taxes payable in 2005, there would still be Additional Rent due as of the first of the year. Thus, the Additional Rent provision is not nullified or rendered meaningless by Crunch's interpretation of the Lease.

Moreover, to the extent 939 North argues that the reference to the tenant's obligation to commence payment of real estate taxes as of the Additional Rent Commencement Date would be nullified under Crunch's construction of the Lease, it is once again, wrong. 939 North argues that if "Real Estate Taxes in the Base Year" means those "levied or assessed" in the Base Year (2004), then no taxes would be due at the Additional Rent Commencement Date, January 1, 2005, (Ex. A, § 5.4) because the Real Estate Taxes payable as of that date are the same as those assessed in the previous year. (Mot. p. 10) Because tenant is liable only for the "increase" in taxes, none would be due, and the provision rendered a nullity. Once again, 939 North chooses to ignore the plain language of the Lease.

As has been thoroughly discussed, 939 North had the right to elect to use the real estate taxes payable or assessed in 2005. In addition, 939 North had the right to "reasonably estimate the increase in Tenant's Proportionate Share . . . of Real Estate Taxes for that calendar year…." Ex. A, § 13.3). Thus, 939 North had the right to elect to use the amount of real estate taxes assessed in 2005, estimate the increase in Crunch's proportionate share and begin collecting one-twelfth of that increase as of the Additional Rent Collection Date. Once again, Crunch's construction of the Lease is consistent with all of the Lease terms.

## V. <u>939 NORTH'S TWO CONSTRUCTIONS OF THE LEASE ARE WRONG</u>

On this Motion, Crunch need not disprove every potential Lease interpretation offered by 939 North, it need only state a cognizable claim. Here, Crunch's Lease interpretation, based on the definition of Real Estate Taxes, establishes a plausible entitlement to relief and thus defeats the Motion. *Villasenor*, 2007 U.S. Dist. LEXIS 49299 at *6. Out of an abundance of caution, however, Crunch addresses and refutes the flawed arguments 939 North asserts in support of the Motion.

939 North argues that, contrary to the definition of "Real Estate Taxes," the phrase "Real Estate Taxes in the Base Year" must be interpreted to refer to the Real Estate Taxes "paid" in the Base Year. As noted above, 939 North makes this strained argument because the taxes paid in 2004, based on 2003 assessments, were substantially lower than in the following year and will result in hundreds of thousands of dollars in tax liability to Crunch. This interpretation cannot be adopted by the Court, for it requires the Court to rewrite the contract to insert the term "paid" where it does not exist, and to disregard the meaning of a defined term.

## A. 939 North's Reliance Upon the Distinction Between "In" and "For" Is Not Supported in the Lease

939 North's position is founded upon an assumption that the parties to the Lease were precise and consistent in their use of the prepositions, "in" and "for." Specifically, 939 North claims that "in" is always associated with "payable" and "for" is always associated with "levied." (Mot. p. 8) Because the Lease uses the term, "Real Estate Taxes *in* the Base Year," so the argument goes, the parties must have intended that such real estate taxes were those that were "payable" in the Base Year. The distinction 939 North seeks to make arises, ironically, out of the definition of the term "for." In Section 13.3 of the Lease, in which 939 North is granted the option to choose between Real Estate Taxes paid or levied for a calendar year, the Lease provides:

> Otherwise, Real Estate Taxes "**for**" a calendar year shall be deemed to refer, at Landlord's option, either to Real Estate Taxes payable in such calendar year or to Real Estate Taxes levied, assessed or otherwise accrued or imposed for such calendar year without regard to when such Real Estate taxes are payable . . . (Ex. A § 13.3). (emphasis added)

This very sentence upon which 939 North hinges its whole position defeats it. In the above quoted sentence, the parties to the Lease agreed that the preposition "for" may be associated with either taxes "payable" or "levied, assessed or otherwise accrued or imposed." (Ex. A § 13.3) Thus, by the Lease's own terms, the strict association between "in" and "payable" and "for" and "levied" was expressly rejected by the parties. In addition, given that the Landlord's option to choose between paid and accrued taxes arises only when the Lease uses the term "for," whatever distinction 939 North wishes to make based upon the language of the option is inapplicable because the phrase in question is "Real Estate Taxes *in* the Base Year," not "Real Estate Taxes *for* the Base Year."

Moreover, the parties failed to adhere to this alleged distinction elsewhere in Section 13 of the Lease. Sections 13.5 and 13.6 of the Lease provide for caps upon the amount of Common Area Costs and Office/Health Club Common Area Costs for which the Tenant will be liable. Both "Common Area Costs" and "Office/Health Club Common Area Costs" are calculated on a cash basis, *i.e.*, the Tenant is responsible for its share of the increase in "those amounts paid or payable by Landlord . . . ." (Ex. A, §§ 13.1,13.2) Nonetheless, in imposing a cap on the Tenant's share of the increase of these costs "paid" by the Landlord in a given year, the parties used both "in" and "for," *e.g.*, "Tenant's Proportionate Share of Common Area Maintenance Charges in the Base Year," "Tenant's Proportionate Share of Common Area Maintenance Charges . . . in the prior calendar year," and "Tenant's Proportionate Share of Common Area Maintenance Charges for the calendar year following the Base Year." (Ex. A § 13.5). The parties use the terms "in" and "for" in the same manner in Section 13.6. Thus, there is no basis to find that "in" always refers to "paid" and "for" always refers to "levied."

**B. 939 North's Interpretation of the Lease Should Be Rejected Because It Requires the Court to Insert a New Term in the Lease**

939 North's Motion asks this Court to effectively insert the word "paid" in between the words "Taxes" and "in" in the phrase "Real Estate Taxes in the Base Year." Insertion of a new term not only ignores that on a 12(b)(6) motion to dismiss it is the plaintiff—not the defendant—that is entitled to all reasonable inferences, but it also ignores the plain language of the Lease. It is black letter law that a court cannot insert a term that the parties themselves chose to omit from or could have included in their Lease. Illinois law recognizes a "strong presumption against reading into contracts provisions that easily could have been included but were not." *Fix v. Quantum Indus. Ptnrs LDC*, 374 F.3d 549, 553 (7th Cir. 2004). In a recent case, this Court noted that courts "cannot . . . add new terms or conditions to which the parties do not appear to have

assented [or] write into the contract something which the parties have omitted." *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (citing *Gallagher v. Lenart,* 367 Ill. App. 3d 293, 301 (1st Dist. 2006)). Here, the Lease, as written by the parties, simply does not contain the word "paid" between the words "Taxes" and "in." The parties are bound by the plain language of the phrase *as it is written* in the Lease—not how 939 North wishes it had been written.

939 North's claim is further unreasonable for if the parties intended for "Real Estate Taxes" to mean those taxes "paid" or "payable" in the Base Year they would have and could have so provided. It would have been simple to add the word "paid" or "payable" to this phrase. The Lease itself reveals that the parties knew how to signify their intent to distinguish when Real Estate Taxes are "paid" versus "assessed." Indeed, the preceding paragraph in Section 13.3 of the Lease allows 939 North to elect between taxes "payable" and taxes "levied or assessed." (Ex. A § 13.3) The parties' decision not to include the word "payable" indicates that, contrary to 939 North's position (Mot. pp. 6-8), the parties did not intend for this phrase to refer to Real Estate Taxes paid in the Base Year. Just as much as the words used in a contract indicate the parties' intentions—so too do the words they have chosen to omit.

### C. 939 North's Insertion of the Word "Paid," When Applied to the Definition of "Real Estate Taxes" Would Nullify the Definition

939 North's interpretation of the Lease must be rejected because this interpretation contradicts or negates the definition of "Real Estate Taxes" in the Lease. The Court must interpret the Lease to give effect to all of its provisions, not in a way that would render them in conflict. *See Nielsen v. Piper, Jaffray & Hopwood*, 66 F.3d 145, 148 (7th Cir. 1995) (noting the "cardinal principle of contract interpretation" that courts are to "read the document as a whole and give effect to all of its provisions and render them consistent with one another.") As noted

throughout this brief, the Lease defines "Real Estate Taxes" as those taxes "charged, levied and assessed against the Project." (Ex. A § 13.3) 939 North's interpretation, under which "Real Estate Taxes" would mean those taxes paid in the Base Year, negates, or attempts to change the meaning of, this defined term. That is, if "Real Estate Taxes in the Base Year" refers to those taxes paid, then it renders a nullity the parties' chosen definition of "Real Estate Taxes" as those "charged, levied and assessed against the Project." (*Id*.)

## VI. 939 NORTH CANNOT RELY ON THE OPTION IN THE LEASE AS IT APPLIES ONLY TO THE DETERMINATION OF REAL ESTATE TAXES IN SUBSEQUENT CALENDAR YEARS—NOT REAL ESTATE TAXES IN THE BASE YEAR

939 North's last argument is that even if the Court finds that "Real Estate Taxes in the Base Year" means the taxes "charged, levied and assessed" in 2004, Crunch's claim still fails because 939 North has already elected to have "Real Estate Taxes in the Base Year" mean those real estate taxes payable in 2004. (Mot. p. 14) This "cure all" argument, which was 939 North's pre-litigation position, is meritless, as the Lease's plain language makes clear that the Landlord's election applies not to the static Base Year, but to subsequent calendar years.

In asserting this now demoted argument, 939 North mischaracterizes the disagreement. When claiming that its election would defeat Crunch's claim, 939 North erroneously states that "it is not disputed that 939 North has elected to use the year of payment of the Real Estate Taxes pursuant to its discretion under this provision in Section 13.3." (Mot. p. 13) Attempting to bolster this argument, 939 North adds that Crunch attached the February 16, 2007 letter indicating 939 North's election to use the year of payment under Section 13.3. (*Id.*)

939 North is wrong. Its election *is* disputed. Crunch rejected 939 North's attempt to "elect" to have the Base Year mean taxes paid in 2004. (Cmplt. Ex. C). Crunch has maintained all along that the Base Year was fixed and that 939 North's right to determine real estate taxes

only permits 939 North to elect the means of calculating the real estate taxes for calendar years subsequent to the Base Year. (Cmplt. ¶¶ 1,12, Ex. C) Indeed, Crunch's prayer for relief asks for a declaration to this effect. (Cmplt. p. 8) The letter attached to the Complaint does not demonstrate the propriety of 939 North's election, but illustrates 939 North's position—a position upon which it no longer relies.

More importantly, 939 North's position is contrary to the plain language of the Lease. As stated above, the Landlord's option to choose between paid and levied taxes arises only when the Lease uses the term "for." Here, the option is inapplicable because the phrase in issue is "Real Estate Taxes in the Base Year," not Real Estate Taxes <u>for</u> the Base Year.

## VII. CONCLUSION

Crunch's interpretation of the Lease is supported by the plain language of the Agreement. The arguments and interpretation of 939 North are not. They require the Court to contradict a defined term and rewrite the contract to insert the word "paid" in the phrase "Real Estate Taxes in the Base Year." Crunch's interpretation is consistent with the other Lease provisions and does not create any ambiguities. The Motion should be denied.

Dated: July 26, 2007

Respectfully submitted,

AGT Crunch Chicago, LLC

By: /s/ Seth Mann Rosenberg
One Of Its Attorneys

Patrick T. Stanton ARDC #6216899
Seth Mann Rosenberg ARDC # 6279711
Schwartz Cooper Chartered
180 N. LaSalle, Suite 2700
Chicago, Illinois 60601
312.346.1300

## CERTIFICATE OF SERVICE

Seth Mann Rosenberg, hereby certifies that on July 26, 2007, he electronically filed **AGT Crunch Chicago, LLC's Response to Defendant's Motion to Dismiss** with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Mark Flessner, Esq.
Anthony Eliseuson, Esq.
Sonnenschein Nath & Rosenthal LLP
7800 Sears Tower
233 South Wacker Drive
Chicago, IL 60606

/s/ Seth Mann Rosenberg
Seth Mann Rosenberg